UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHARLES A. BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00450-JMS-DLP |
| | ) | |
| RICHARD BROWN Warden, | ) | |
| S. ORNDORFF Aramark Corr. Servs. LLC | ) | |
| (Supervisor), | ) | |
| FELISHA RHODES Aramark Dietitian, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

For the reasons explained in this Entry, the defendants' motions for summary judgment,

dkt. 75 and dkt. 84, are **granted.**

**I.  Background**

Plaintiff Charles A. Benson is a prisoner confined at the Wabash Valley Correctional

Facility (Wabash Valley). He brings this 42 U.S.C. § 1983 civil rights action against three

defendants: 1) Warden Richard Brown; 2) supervisor of Aramark S. Orndorff; and 3) dietician

Felisha Rhodes.

A notice of death was filed on December 31, 2019, advising that Ms. Rhodes passed away

on May 10, 2019. Dkt. 91. No motion for substitution was filed in accordance with Rule 25 of the

Federal Rules of Civil Procedure. *See* dkt. 97.  Accordingly, the claim against Ms. Rhodes has

been abandoned. Even if the claim had not been abandoned, Ms. Rhodes is entitled to judgment in

her favor for the reasons set forth in this Entry.

In his amended complaint filed on November 14, 2018, Mr. Payton alleged that the meals served to him in disciplinary segregation were inadequate, causing him to lose between 9 and 10 pounds since June 29, 2018. Dkt. 8. He further alleged that due to the length of time (15 hours) between dinner and breakfast (3:45 pm until 7:00 am), he was extremely hungry every night. He alleged that Warden Brown was intentionally trying to inflict pain on inmates in segregation, that Mr. Orndorff failed to provide adequate nutrition, and Ms. Rhodes was responsible for the menu and portions. The Court liberally construed the amended complaint to allow Mr. Benson's Eighth Amendment claims that the defendants were deliberately indifferent to Mr. Benson's need for adequate food to proceed.

The defendants seek resolution of the claims against them through summary judgment. Dkts. 75, 84. Mr. Benson responded to the motions for summary judgment, dkts. 88-90, 92-94, the defendants replied, dkts. 95, 96, and Mr. Benson surreplied, dkt. 101. The motions are ripe for resolution.

## II.  Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir.

2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps.Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

### III.  Discussion

#### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Benson as the non-moving party with respect to the motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At all times relevant to this lawsuit, Mr. Benson has been housed in the restricted housing unit at Wabash Valley, referred to as the SCU. Dkt. 75-1, 52: 23-25; 53: 1-3.

Mr. Orndorff is employed as the Food Service Manager by Aramark Correctional Services, LLC, (Aramark) at Wabash Valley. Aramark provides food service to Wabash Valley pursuant to a contract between Aramark and the Indiana Department of Correction (IDOC) (Contract). In his role as Food Service Manager, Mr. Orndorff is responsible for daily food service at Wabash Valley. This includes overseeing the preparation of daily meals for the inmates. He is also responsible for ensuring that the meals served are consistent with the meals identified by the IDOC under the Contract. The meals provided at all relevant times were approved by the IDOC and by the dietician, Ms. Rhodes.

The meals provided to Mr. Benson met the nutritional guidelines of the American Correctional Association, which are based on the current DRIs (Dietary Reference Intake) for males and females between 19 and 50 years old as established by the Food and Nutrition Board of

the Institute of Medicine, National Academy of Sciences. Dkt. 85-1, ¶ 6. The menu also provides for adequate levels of protein, Vitamin A, Vitamin C, calcium and iron. *Id.* The standard daily meals at Wabash Valley provide inmates with approximately 2500 – 2800 calories. *Id.* Compliance with the food items on a Master Menu is mandated by the Contract. *Id.*; dkt. 85-2. The IDOC conducts quarterly inspections and at all relevant times, the meals served were consistent with the Master Menu. Dkt. 85-1, ¶ 8.

In the SCU, Mr. Benson receives three meals a day. Dkt. 26-1. Mr. Benson is able to hold back food from his tray in the event he needs a snack during a non-meal time. Dkt. 75-1 at 21-22. Mr. Benson currently receives a Kosher diet that "fills [him] up and lasts [him] until the next time—until the next time we pass out trays[.]" *Id.* at 59:10-12. No medical professional at Wabash Valley has ever noted concerns about Mr. Benson's weight. *Id.* at 32: 23-25; 33: 1 dkt. 75-2.

Mr. Benson is 5' 7' tall. Dkt. 75-1 at 26. Mr. Benson's weight has been recorded over time at Miami Correctional Facility (Miami) and Wabash Valley as follows:

| | |
|---|---|
| Oct. 11, 2017 | 154 pounds |
| Feb. 1, 2018 | 159 pounds |
| June 29, 2018 | 161 pounds |
| Oct. 29, 2018 | 157 pounds |
| Dec. 13, 2018 | 155 pounds |
| Jan. 15, 2019 | 153 pounds |
| Feb. 7, 2019 | 154 pounds (reported "No significant wt loss in last 6 mos.") |
| March 18, 2019 | 161 pounds |
| April 9, 2019 | 153 pounds |

Dkt. 26-2 at 1, 4, 7, 13; dkt. 75-2 at 162, 122, 92-93, 77-78, 34, 25.

IDOC policy requires that the foodservice program shall provide three meals, two of which are hot, at regular meal times each 24-hour period, and that "[n]o span of time between evening meals and the following morning breakfast shall exceed fourteen (14) hours, except in an emergency security situation as declared by the Warden or designee." Dkt. 94 at 36-37, IDOC Policy 04-01-301, The Development and Delivery of Foodservices, XIX. "Variations may be allowed based on weekend and holiday foodservice demands provided basic nutritional goals are met and the variations are approved by the Administrator." *Id*.

While in the SCU, Mr. Benson's breakfast is usually served between 6:30 and 7:15 a.m., lunch between 10:45-11:00 a.m., and dinner usually comes between 3:45 and 4:00 p.m. Dkt. 75-1 at 20; dkt. 75-3 (Meal Flow Sheets). The food service times at Wabash Valley are set by the IDOC. Dkt. 85-1, ¶ 10. Neither Mr. Orndorff nor Ms. Rhodes set the meal service times. *Id*. Mr. Benson received more food, two trays at every meal, once he started receiving a Kosher diet in June of 2019. *Id*. at 23.

Mr. Benson asserts that he notified Warden Brown several times about the inadequate portions of food that were served in the SCU. He contends that Warden Brown failed to take any steps to address his complaints. Mr. Benson testified that "the only thing [Warden Brown] told me was if I noticed a tray was missing or something, or a portion wasn't adequate, to notify the staff; and they will be able to switch the trays and make sure it was corrected, but the staff never does." Dkt. 75-1 at 9.

When Mr. Benson complained to Mr. Orndorff, he told Mr. Benson that staff made sure the trays were appropriate, but if the food was insufficient or something was missing, Mr. Benson could have staff switch it out for another tray. *Id*. at 43-44. When Mr. Benson was not satisfied with the food on his tray, he would tell an officer about the problem and the officer would

sometimes replace the tray. *Id.* at 44-45. The new trays had either more food, less, or the same. *Id.* at 45.

### B. Discussion

Mr. Benson was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017). ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendants knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). "[M]inor pains" do not constitute serious medical conditions. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

Inmates are entitled to adequate food and nutrition. *See Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) ("Deliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, … or other severe hardship, would violate the Eighth Amendment."); *Atkins v. City of Chi.*, 631 F.3d 823, 830 (7th Cir. 2011) ("Depriving a person of food for four days would impose a constitutionally significant hardship….").

Mr. Benson was provided three meals a day and the food complied with nutritional requirements. He does not argue otherwise. In October of 2017, while confined at Miami, Mr.

Benson weighed 154 pounds. In late June of 2018, when he arrived at Wabash Valley, he weighed seven pounds more, 161. Four months later, he had lost four pounds, 157. By January 15, 2019, he weighed 153 pounds, another four-pound decrease. In April 2019, he still weighed 153 pounds. This amounted to some fluctuations but an overall loss of eight pounds in approximately ten months from the date he came to Wabash Valley. Mr. Benson, however, maintained essentially the same weight (a one-pound loss) from the fall of 2017 through the spring of 2019, with slight increases and decreases over time. Since May 2019, Mr. Benson has received a Kosher diet and has no longer complained about his weight or felt hungry at night.

Mr. Benson alleges no other physical harm or other medical complications from the weight loss. No medical provider ever noted concerns about Mr. Benson's weight. There is no evidence indicating that Mr. Benson was underweight, much less substantially so, for his size at any time.

For the objective component of a deliberate indifference claim, a plaintiff must establish "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir.2019) (internal quotation omitted). No reasonable jury could find that Mr. Benson's weight loss resulted in an objectively excessive risk to his health and safety. Mr. Benson has not created a genuine issue of material fact on the first prong of his Eighth Amendment claims.

Mr. Benson also contends that the timing of his meals violated the Constitution. He states that before he started on the Kosher diet, he was forced to go to sleep hungry because the last meal was served at 4:00 p.m. Dkt. 93, ¶ 13. Setting aside that Mr. Benson could hold some food back to eat later in the evening, he relies on the fact that IDOC policy requires meals be served no more than 14 hours apart. Based on Mr. Benson's testimony, his breakfast meal would sometimes come

more than 14 hours after dinner was served. A violation of IDOC policy, however, does not support a constitutional claim. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of ... departmental regulation and ... practices[.]") (internal quotation omitted). The Seventh Circuit has noted that the extent, duration, and consequences are relevant in determining whether the deprivation of food violates the Eighth Amendment and that even two meals a day might satisfy the Constitution if the food is nutritionally adequate. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). There is no evidence that the timing of the three meals Mr. Benson received each day created a substantial risk to Mr. Benson's health. Accordingly, the timing of Mr. Benson's meals did not violate the Eighth Amendment.

Without demonstrating that he suffered from a serious medical condition, Mr. Benson cannot withstand summary judgment. Even if Mr. Benson had shown that he was subjected to a serious medical condition caused by lack of food, he has not presented evidence showing that the defendants were subjectively aware of such a condition. "A jail or prison official may be found liable only if he knows of and disregards an excessive risk to inmate health or safety." *Estate of Simpson*, 863 F.3d at 746 (internal quotation omitted). "This means that the defendants must have acted with more than simple or even gross negligence, although they do not need to act purposefully or knowingly inflict harm." *Id.* "The requisite level of knowledge may be inferred in instances where the risk posed by the condition is obvious." *Id.*

Here, there is evidence that Mr. Benson complained to Warden Brown and to Mr. Orndorff. In response to his complaints, both defendants told him to notify the staff who were handing out the food trays that there was a problem. Warden Brown's and Mr. Orndorff's responses were reasonable and Mr. Benson did ask for different trays when he believed the portions were too

small. Moreover, there is no evidence that either Warden Brown or Mr. Orndorff were aware that Mr. Benson was suffering from any serious medical condition caused by any lack of food or weight loss.

As to his claim against Ms. Rhodes, Mr. Benson has presented no evidence that he had any contact with her or that she was aware of any of his issues with the food trays. There is also no evidence that Ms. Rhodes' menus or nutrition provided to the inmates fell below constitutional standards.

Mr. Benson has not created a genuine issue of fact on either prong, objective or subjective, of his deliberate indifference claims against any of the three defendants. For these reasons, the defendants are entitled to judgment as a matter of law.

## IV. Conclusion

For the reasons discussed above, the defendants' motions for summary judgment, dkts. [75] and [84], are **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/18/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

9

Distribution:

CHARLES A. BENSON
202702
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com